IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN SONGER,

        Plaintiff,                     15cv0033

                                   **ELECTRONICALLY FILED**

        v.

RELIANCE STANDARD LIFE
INSURANCE COMPANY,

        Defendant.


**Memorandum Opinion on "Cross-Motions" for Summary Judgment**


## I.    Introduction

This is an action brought pursuant to 29 U.S.C.§ 1132(a)(1)(B)(the Employer Retirement

Income Security Act of 1974 - - hereinafter "ERISA").[1]  Plaintiff, John Songer, as a participant

and beneficiary of an ERISA governed long-term disability contract/policy issued by Defendant,

Reliance Standard Life Insurance Company, seeks to recover benefits due to him and to clarify

his rights to future benefits under the terms of the Policy.  Pending before this Court is

Defendant's Motion for "Partial" Summary Judgment (doc. no. 24), Plaintiff's Response in

Opposition (doc. no. 35), Defendant's Reply thereto (doc. no. 47), Plaintiff's Sur-Reply (doc. no.

53), and Defendant's Response to Plaintiff's Sur-Reply (doc. no. 55).[2]  For the reasons that

follow, the Court will DENY Defendant's Motion for Summary Judgment, will GRANT

Plaintiff's (converted) Motion for Summary Judgment and, thereby, will find in favor of Plaintiff

---

[1] Plaintiff brought also alternative causes of action for bad faith (pursuant to 42 Pa.C.S.A. § 8371) and
breach of contract, in the event that the Court found that subject matter jurisdiction was not governed by
ERISA.  The parties stipulated to the application of ERISA and withdrew state law claims on February 4,
2015 (doc. no. 4).  Defendant also brought a Counterclaim alleging Social Security Offset (doc. no. 8) in
the amount of $23,968.87 with interest and attorney's fees (doc. no. 8).
[2] This case's unique Procedural Posture is explained in Part II, *supra*.

that the decision denying Long Term Disability Benefits was fraught with procedural irregularities thus compelling a finding that the decision was arbitrary and capricious.

## II.     Procedural Posture

Having exhausted Plaintiff's administrative remedies, this case was filed on January 1, 2015 (doc. no. 1).  Defendant filed a Counterclaim seeking Social Security Offset and related interest and attorney's fees in the amount of $23,968.87 (doc. no. 8).  On March 13, 2015, the Court conducted an Initial Case Management Conference, wherein a procedure was discussed to first resolve the Social Security Offset issue, and then to proceed to a more complete round of summary judgment briefing by June 1, 2015.  When the Court received Defendant's Motion for "Partial" Summary Judgment on March 24, 2015, and the attendant briefing and responses, the Court recognized that the briefing was not limited to the Social Security Offset issue, but instead was a full and in-depth briefing, and addressed all relevant issues in the case.  Accordingly, the Court, by text Order of April 14, 2015, sent notice of its intent to convert Defendant's "Partial" Motion for Summary Judgment into a "Complete" Motion for Summary Judgment, and to rule thereon prior to the Mediation of May 18, 2015.  The text Order stated:

> The Court has reviewed the motion (which Defendant titles as a "partial" motion for summary judgment but which appears to be a complete motion for summary judgment), the response, and accompanying briefs. Upon filing of the reply (due by April 23, 2015 at noon), the Court is prepared to rule on the pending motion for summary judgment regarding both the issue of offset of Social Security and the merits of whether Plaintiff was denied a full and fair review of his Long Term disability claim, prior to the mediation date (which is scheduled to occur on or before May 18, 2015). At this time, the Court finds that no oral argument will be necessary and the Court hereby cancels the argument date of April 27, 2015 at 8:30 a.m.

Doc. No. 45.

The Court then permitted three further rounds of briefing with appendices and affidavits (doc. nos. 47, 53 and 55).  In light of the depth and completeness of the

briefing on all relevant issues (doc. nos. 24, 35, 47 and 53), by Text Order of May 4, 2015, stated as follows:

> ORDER providing notice of Court's intent to convert current 'partial' summary judgment, and responsive documents into cross-motions for complete summary judgment. Consistent with the Text Order of 4/14/2015, and the depth and completeness of briefing on all relevant issues (doc. nos. 24, 35, 47 and 53), this Court will convert Plaintiff's responsive documents into a cross-motion, and will rule accordingly. See also doc. no. 45 .

Doc. No. 57.

The Court has afforded the parties numerous rounds of briefing - - 5 to be exact.

Pursuant to the April 14, 2015 and May 4, 2015 Text Orders, Defendant's Motion and Plaintiff's Response will be considered as Cross-Motions for Summary Judgment and are the subject of this Memorandum Opinion.

## III. Facts[3]

### A. Group Long Term Disability Policy Issued

Defendant issued group long term disability (LTD) policy number LTD 118592 to SSSI, Inc. dba Songer Steel Services, Plaintiff's former employer. SSSI's Disability Plan is an ERISA plan that is not self-funded. Under the terms of the policy, Reliance has complete authority to grant or deny a claim for benefits.

The Policy provided Long-Term Disability benefits covered in an amount equal to 60% of Covered Monthly Earnings, with a maximum monthly benefit of $6,000.00. The Policy defines "totally disabled" and "total disability" as:

> (1) During the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation:

---

[3] The parties have amassed a large amount of factual information, having set forth over 24 pages of "concise material facts." The Court has attempted to set forth only the pertinent material facts by reviewing the entire administrative record, and has noted where factual disputes remain.

(2)  After a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation.  We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

### B.        Plaintiff's Application for LTD

Plaintiff, who was employed as Vice President of Sales at SSSI from 2003 to 2011, submitted a claim for disability on January 12, 2012, wherein his "diagnosis" by his treating physician, Dr. Frank Kunkel, M.D., was Post-Laminectomy Syndrome, Thoracic/Lumbar Radiculitis, and Lumbago.  Doc. No. 26-2; AR-0396.  Dr. Kunkel did not list any mental diagnosis as part of his diagnosis.  Dr. Kunkel indicated in the Physician's statement form of Defendant that Plaintiff had moderate limitations of a mental/nervous nature due to his diagnosis of Post Laminectomy Syndrome.  AR0465.  In his January 12, 2012 application, Plaintiff listed the following "conditions causing [his] disability":  "Spinal Stenosis, Sciatic Nerve, two failed back operations and Diabetes."  AR-0456-457.  Plaintiff listed as the reason he was "unable to work" - - "constant pain, need full rest and want to perform 3rd operation."  AR-0456-457.  Nowhere on the original disability claim form of January 12, 2012 was depression listed.  AR-0387.  For reasons unknown, Plaintiff submitted (or was asked to submit) a second undated employee statement, and in it, he changed his previous "reason for leaving" to include "back pain depression."   AR-0385.  Plaintiff did not, however, change his listed disability to depression.

### C.        Medical Evidence Received/Reviewed by Defendant

Defendant had received medical evidence from Dr. James Kang, Plaintiff's orthopedic surgeon.  Dr. Kang stated that Plaintiff "has developed severe junctional stenosis at L2-3 and L3-4, with almost complete occlusion of the spinal canal . . . his bilateral leg pain . . . has

incapacitated him over the past month . . . ." AR-0439. It is important to note that there was no evidence which contradicted the opinions and findings of Plaintiff's treating physicians, Drs. Kunkel and Kang.

After a review of the medical records by Defendant's nurse reviewer, Cathy Ricci, RN, concluded that Plaintiff's "primary diagnosis" was Post-Laminectomy Syndrome of the lumbar region, although her notes also discuss a history of anxiety/depression treating with a number of psychotropic trials following the death of his son in an auto accident. AR-0222-223.

### D. Short Term Disability Awarded

On June 21, 2012, Defendant notified Plaintiff that he had been awarded Short Term Disability (STD). AR-0098. Although Defendant did not advise Plaintiff that the STD award was based upon a "psychiatric impairment," instead of his back condition, Defendant contends that he did not only apply for benefits based on his back condition, and in any event, Defendant was not required to tell Plaintiff the basis for the award of benefits.

### E. Claims Log Entries

Due to the tragic death of Plaintiff's son and then his wife, Plaintiff became increasingly depressed. This information is noted in Defendant's claim log. The adjuster did an on-line search of the tragic circumstances of Plaintiff's son's death on or about August 15, 2012, and noted as the primary diagnosis "Depression." AR-0286.

On October 4, 2012, through the claims log notes of the nurse reviewer, Defendant acknowledged that the records "would support [Plaintiff] on a major depressive disorder, due to the death of his son . . . this is a more difficult one to determine than most." AR-0252.

### F. LTD Awarded - Limited

On November 29, 2012, Defendant sent a letter to Plaintiff stating "it appears that you have met the group policy's definition of Total Disability."  In the November 29, 2012 letter, it provided an explanation of the benefits calculation and mentioned a potential offset in the event Plaintiff's application for Social Security benefits was granted.  The letter stated that Plaintiff's "claim for Long Term Disability (LTD) benefits has been approved at this time."  AR-0321-322. Nowhere in the letter was it stated that Plaintiff's award was based upon mental/nervous disability and that it was limited to 24 months (the two alleged versions of the November 29, 2012 letter are discussed below).

Plaintiff's LTD benefits commenced April 12, 2012, following an elimination period and a time period before April 12, 2012 wherein Plaintiff had been awarded Short Term Disability. In the November 29, 2012 letter, Defendant stated that future benefits are available "provided that [he] remain[s] Totally Disabled as defined by the group policy."  AR-0321.  Plaintiff contends that he "reasonably believed" that the award was based on his back condition, which was permanent and degenerative, and therefore he would remain totally disabled under the policy for the next 9 years.

**G.    LTD Claim - "Closed"**

On September 24, 2013, only 10 months after his award letter, Defendant sent Plaintiff a second letter "closing" his claim.  The September 24, 2013 letter states that after benefits have been paid for 24 months, the Policy's definition of Total Disability then requires an insured to prove disability from Any Occupation (post the first 24 months), as opposed to his Own Occupation (for the first 24 months).  AR-0350.  According to Plaintiff, the September 24, 2013 letter was the FIRST notice that the disability award was allegedly based upon a mental diagnosis, as Defendant never informed Plaintiff on a prior occasion that the award of disability

benefits was NOT based upon his back condition.  In other words, Plaintiff contends that the reason for his requested disability - - a degenerative back condition, was never before rejected by Defendant.  In none of the 10 letters sent to Plaintiff from the date of his award to the September 24, 2013 termination letter, did Defendant advise Plaintiff that his claim was only awarded for a mental/nervous disability.  AR-0330-31, 335-37, 341-45, 348.  Further, Plaintiff argues Defendant never formally denied Plaintiff's initial claim for disability based upon his back.  Defendant disagrees and states that Plaintiff was told "multiple" times; however, the Court's review of the record reveals that the first occasion that Plaintiff was notified of this facts was on September 24, 2013.  AR-0351.

Again, the September 24, 2013 letter stated that the Policy does not cover a loss that is caused or contributed to a "Mental or Nervous Disorder," after 24 months. [4] AR-0351.  It stated "Your benefits first became payable on April 12, 2012 because you met the policy's definition of Total Disability due to your diagnosis of depression."[5]  AR-0351.  The letter further stated: "An updated medical review of your claim filed completed on September 13, 2013 documents that you are also treated for spinal stenosis.  The medical review opines that in the absence of any psychiatric impairment it appears reasonable that you would have sedentary work capacity."  AR-0351.  At the conclusion of the September 24, 2013 letter, Plaintiff was provided notice of

---

[4] The difference between an award of mental/nervous benefits and an award for degenerative back benefits would have been $223,000.  Since the SSSI's plan is not self-funded, the difference in benefits paid, is retained by Defendant.

[5] If Plaintiff suffered from a mental/nervous condition of an organic "origin," the Policy language exempts those conditions from Defendant's definition of a mental/nervous disorder.   According to the policy language "mental or nervous disorder means a neurosis, psychoneurosis, psychopathy or psychosis without demonstrable organic origin . . . ."  AR-028.  With regard to Defendant's alleged finding that Plaintiff qualified for disability based upon his mental state, Plaintiff contends that Dr. Kunkel's statement regarding the mental/nervous limitation supports that there was an organic cause for Plaintiff's mental issue, i.e. his chronic pain.  Defendant disputes that even though Plaintiff's back condition may have contributed to his depression, it does not make it an "organic cause."  According to Plaintiff, Defendant did not investigate this medical issue via any of Plaintiff's treating physicians or via independent medical review by a physician.  Defendant counters that it had no duty to do so and that Plaintiff failed to provide any further information.

his right to file a "request for review" or appeal of this determination within 180 days. AR-0352.

Plaintiff was surprised and upset by Defendant's change of Plaintiff's claim to a mental/nervous disability, as was noted in the claim log of Defendant. AR-0239. Following the September 24, 2013 closing of his claim, Plaintiff obtained counsel and contested his termination of benefits.

### H. Social Security Disability Benefits Awarded

Plaintiff's claim for Social Security Disability benefits was approved on or about October 1, 2013. AR-0607. While the parties agree that under the language of the Policy, Defendant is entitled to an offset for Social Security payments, the parties disagree as to the method of calculation of said offset.[6]

### I. Correspondence between counsel following "closing" and "re-opening" of Claim

Thereafter, on October 23, 2013, counsel for Plaintiff requested "any and all documents wherein you initially determined Plaintiff's eligibility for benefits." AR-0614.

On October 31, 2013, Defendant notified Plaintiff (by letter to Plaintiff's counsel) that his claim had been overpaid and requested repayment in the amount of $24,768.87. AR0356-357. Responding to a request from Plaintiff's counsel, Defendant provided an explanation of the overpayment calculation on November 18, 2013. AR-0360.

---

[6] The Policy specifies that "The Monthly Benefit is an amount equal to 60% of Covered Monthly Earnings, payable in accordance with the section entitled Benefit Amount." AR-09. The Policy explains:
> BENEFIT AMOUNT: To figure the benefit amount payable:
> (1) multiply an Insured's Covered Monthly Earnings by the benefit percentage(s), as shown on the Schedule of Benefits page;
> (2) take the lesser of the amount:
> (a) of step (1) above; or
> (b) the Maximum Monthly Benefit, as shown on the Schedule of Benefits page; and
> (3) subtract Other Income Benefits, as shown below, from step (2) above.
AR-021. The Maximum Monthly Benefits under the Policy is "$6,000 (this is equal to a maximum Covered Monthly Earnings of $10,000)." AR-09.

Then, by letter of October 31, 2013, Defendant claimed that based upon recently received "additional medical information," it was "re-opening the claim." AR-0356. Further, Defendant stated that its position had changed and that Plaintiff was now considered to have ". . . no work capacity due to his psychiatric and physical conditions." AR-0356.

Counsel for Plaintiff again requested, "any and all documents" and specifically, the "additional medical information" that was the basis for the re-opening of Plaintiff's claim. AR0617. It appears that the "additional medical information" was Dr. Kang's 2010-2011 medical records which Defendant had actually received for the first time in June of 2012, **a year prior to** closing the claim. AR-0437-449.

### J. Two Versions of November 29, 2012 Award Letter

In response to Plaintiff's counsel's request for the claim file, Defendant produced a "different" November 29, 2012 award letter, than which it had sent Plaintiff. AR-0326-327. Defendant contends that the letters were prepared on the same date, but for "privacy reasons," the copy of the letter sent to the employer did not include the reference to mental or nervous disorders limitation. AR-0322-327. The parties agree that Defendant nonetheless represented to Plaintiff's counsel that this was the original award letter.

One version of the November 29, 2012 letter Defendant sent to Plaintiff's counsel included the following language (although the parties dispute whether or not this language was included in the letter to Plaintiff).

> Your group policy further provides that benefits are payable for a maximum of 24 months if a disability occurs as a result of a mental or nervous disorder. At present, the medical information within your claim file suggests that your disability falls within this limitation. AR-0326-327.

The parties dispute whether Plaintiff received this version of the letter explaining that his benefits were based upon a mental or nervous disorder.[7]  Defendant stated that "Plaintiff misrepresents the facts when he suggested that the version without the limitation language is the only one he received."  Doc. No. 46 at p. 11.  Plaintiff in his appendix to the Sur-Reply, contends that a review of Defendant's claims log evidences that Plaintiff did not receive any such letter and was not aware of the mental/nervous limitation.  This Court's review of Defendant's September 21, 2012 claim log documents that Plaintiff stated that "his leave is due to back pain and back surgery."  AR-0252.  In addition, on October 1, 2013, Defendant's claim log notes document that Plaintiff was "upset and confused" when advised that his benefits were based upon and limited by the mental/nervous 24 month limitation.  AR-0239.

### K.    No Medical Review performed by MD until August 18, 2014

Whether or not Defendant had a duty to do so, there is no dispute that in processing Plaintiff's claim, Defendant never had Plaintiff examined by any medical doctor, never performed an Independent Medical Evaluation (IME), and never consulted with the treating physicians via phone or otherwise.

According to Defendant, Dr. Lewis reviewed the medical evidence, albeit on August 18, 2014, almost two years later, and stated "given the lack of any medical documentation since 2012, I am unable to assess the claimant's current conditions as of April of 2012 therefore the claimant would not have any supported limitations from a physical medicine and pain perspective."  AR-0636.  It is undisputed that Defendant did not obtain medical review of this claim until the appeal process.

---

[7] The other version of the letter makes no reference to Plaintiff's mental impairment as basis for grant of disability.

In his summary of the records, Dr. Lewis refers to Dr. Kang's November 17, 2006 note, i.e. ". . . all of his leg pain is completely resolved." AR0632. Dr. Kang last saw Plaintiff in 2011. In the 2011 notes, Dr. Kang states that Plaintiff, ". . . has developed severe junctional stenosis at L2-3 and L3-4, with almost complete occlusion of the spinal canal . . . his bilateral leg pain . . . has incapacitated him over the past month. . ." AR-0438. Dr. Lewis did not reference these records in his report.

Despite the fact that Defendant had authorizations signed by Plaintiff effective for the duration of the claim, Defendant only requested opinions from Dr. Anthony, Plaintiff's treating psychiatrist. AR-0338-340. Defendant did not provide a copy of the reviewing M.D.'s report to Plaintiff until after the appeal. After counsel was obtained by Plaintiff, Defendant still made contact with Plaintiff directly which Defendant contends was an "accident." Doc. No. 47 at ¶ 63.

### L.      LTD Benefits Terminated

Consistent with its September 24, 2013 letter to Plaintiff, on April 24, 2014, Defendant advised Plaintiff's counsel that LTD benefits were being discontinued, effective April 12, 2014. AR-0366. In the April 24, 2014 letter, Defendant cited the Policy's definition of "Total Disability" and the 24 month limitation on benefits payable for "Mental or Nervous Disorders." AR-0366-369.

Defendant further stated that Plaintiff's counsel never responded to Defendant's January 29, 2014 request for updated medical records. While Plaintiff agrees that he did not, Plaintiff replies that he and his counsel were requesting the complete file and notification of the following information: if, when, and why Plaintiff's back disability claim was denied. Defendant did not provide that information, and Plaintiff contends that Defendant failed to provide him with a full and fair review of his claim. Plaintiff claims that Defendant already had sufficient,

uncontroverted medical evidence in its claim file to find that Plaintiff was totally disabled under

the Policy, and Plaintiff had already provided signed authorizations allowing Defendant

complete access to all of Plaintiff's medical and/or financial records (which were effective for

the duration of the claim). Defendant contends that no response was provided until April 7,

2014, and Plaintiff failed to include any of the requested information, again on the basis that

Defendant had not provided Plaintiff with the information he requested and because Plaintiff had

already signed authorizations granting Defendant access to his medical and financial records.

AR-0487, 524, 561-62.

### M.     Administrative Remedies Exhausted

In the April 24, 2014 letter, Defendant again provided Plaintiff notice of his right to

appeal within 180 days and on July 1, 2014, Plaintiff appealed the decision. In Plaintiff's appeal

letter he outlined that he applied for disability based upon his degenerative and permanent back

condition, that it was "unreasonable" to demand Plaintiff to provide updated medical records,

and that the formula used to calculate the offset for Social Security was "unconscionable." On

September 26, 2014, Defendant wrote to Plaintiff's counsel to notify him that the prior claim

determinations were upheld. AR-0374-381.

## IV.     Standards

### A.     Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law. *Woodside v. Sch. Dist. of Philadelphia Bd. of Educ.,* 248 F.3d 129, 130 (3d Cir.

2001), quoting *Foehl v. United States,* 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted). An

issue of material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); see also *Doe v. Abington Friends Sch*., 480 F.3d 252, 256 (3d Cir. 2007) (A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non moving party in light of his burden of proof).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party. *Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001).

**B.  ERISA**

"A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Where, as here, the Plan explicitly grants discretionary authority to Defendant to determine eligibility for benefits and to interpret the terms of the Policy and the Plan, the deferential "arbitrary and capricious" standard must be applied to Defendant's decisions. *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525-26 (3d Cir. 2009).

Under the arbitrary and capricious standard of review, the Court may only overturn a decision of the Plan it "it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. Am. Airlines, Inc*., 632 F.3d 837, 845 (3d Cir. 2011).  Substantial evidence is "sufficient evidence for a reasonable person to agreement with the decision." *Courson v. Bert Bell NFL Player Retirement Plan*, 214 F.3d 136, 142 (3d Cir. 2000)(quoting *Daniels v. Anchor Hocking Corp*., 758 F.Supp. 326, 331 (W.D. Pa. 1991)).

Where, as here, a defendant makes both eligibility decisions and pays any benefits that may be owed, a structural conflict of interest exists. "The reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits . . . and . . . the significance of the factor will depend upon the circumstances of the particular case." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008)(abandoning "sliding scale" approach).

A conflict of interest is one of several important factors in determining whether the fiduciary abused its discretion. In assessing a Plan's decision, a reviewing court must consider both structural and procedural conflicts of interest. *Berkoben v. Aetna Life Ins*., 8 F.Supp.3d 689, 706 (W.D. Pa. 2014). Because Defendant has complete authority to grant or deny a claim, the United States Court of Appeals for the Third Circuit has recognized that these circumstances create a structural conflict of interest. *Miller v. American Airlines, Inc*. 632 F.3d 837, 845 (3d Cir. 2011). A procedural conflict of interest arises when there are irregularities in the process employed in denying a claim, which violate the Plan's duty of fiduciary neutrality. *Berkoben*, at 706. The existence of a conflict of interest, however, does not change the applicable standard of review, rather it remains a factor relevant to whether the decision to deny Claimant's request for benefits was arbitrary and capricious. *Haisley v. Sedgwick Claims Management Services, Inc*. 776 F. Supp.2d 33, at FN 9 (W.D. Pa. 2011).

## V.   Discussion

### A.   Claim Process Irregularities = Lack of Fiduciary Neutrality

In *Haisley v. Sedgwick Claims Management Services, Inc*., 776 F.Supp.2d  33, 48 (W.D. Pa. 2011) (Conti, C.J.), the United States District Court for the Western District of Pennsylvania

found that a denial of an ERISA plan beneficiary's claim for LTD was arbitrary and capricious. The Court in *Haisley* noted the following, which bears repeating:

> Since "benefits determinations arise in many different contexts and circumstances, the factors to be considered from one case to the next are 'varied and case-specific.'" *Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522, 526 (3d Cir.2009). '[A]ny one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance.' *Glenn*, 554 U.S. at 117, 128 S.Ct. 2343. The court will consider all factors relevant to this case to determine whether defendants' decision to deny Haisley's claim on the basis of the existing record was arbitrary and capricious.

In finding the denial of the claim to be arbitrary and capricious, in *Haisley*, Chief Judge Conti provided the following list of reasons for her decision (noting that the conflict of interest was a minimal one), many of which are relevant here. Chief Judge Conti found that the claims administrator improperly: (1) rendered inconsistent decisions during the initial stages of the application process, (2) rejected the opinion of three treating physicians, (3) relied on the opinions of four non-examining physicians, (3) failed to request an independent medical examination, and (4) ignored the beneficiary's receipt of Social Security disability after having required the beneficiary to apply for them.

Although ERISA does not require a plan administrator to request that a claimant undergo a medical examination before denying his or her claim, the failure to procure such an examination may be unreasonable where the specific impairments or limitations at issue are not amenable to consideration by means of a file review. *See Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir.2006); *Lamanna v. Special Agents Mut. Benefits Ass'n*, 546 F.Supp.2d 261, 296 (W.D.Pa.2008). "Where the plan at issue specifically provides a plan administrator with the authority to request an independent medical examination, the failure of the plan administrator to procure such an examination before denying a particular claim may 'raise questions about the

thoroughness and accuracy of the benefits determination.'" *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir.2005).

The United States Court of Appeals for the Third Circuit has stated that a plan administrator's "[i]nconsistent treatment of the same facts" should be "viewed with suspicion." *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 393 (3d Cir.2000); *Post v. Hartford Ins. Co.*, 501 F.3d 154, 164–65 (3d Cir.2007) (referring to a "reversal of position without additional medical evidence" as being among "numerous procedural irregularities that can raise suspicion").

The factual background in this case reveals that Plaintiff's original claim for disability was based only on his back condition and nowhere in the original application is a mental or nervous disorder even mentioned. Additionally, the only Physician Statement by Dr. Kunkel listed "primary diagnosis" as "Post Laminectomy Syndrome Lumbar Regions – 722.83." AR-0464. Defendant's reliance on Dr. Kunkel for a mental/nervous diagnosis was misplaced given that he did not list any mental diagnosis as part of his diagnosis and did not make any mental/nervous diagnosis in his treatment of Plaintiff. Dr. Kunkel instead indicated on Defendant's preprinted form that Plaintiff had moderate limitations of a mental/nervous nature due to his diagnosis of Post-Laminectomy Syndrome. AR-0465. Defendant now contends that Dr. Kunkel's brief mention of mental/nervous limitations was the basis for Plaintiff's application. The record contradicts that contention. It is also unusual that in the log reviews that were performed by Defendant during the claim process, the reviewers do not mention Dr. Kunkel's statement regarding mental/nervous limitations. AR-0222-225 and AR-079-81.

Plaintiff posits, and this Court agrees, that in processing the claim, the following irregularities occurred: (1) Defendant rejected the only medical doctors' opinions that were

submitted regarding Plaintiff's back condition; (2) Defendant did not conduct a medical exam of Plaintiff; (3) Defendant did not consult with Plaintiff's treating physician for his stated reason for disability – his back condition; (4) Defendant rejected its own medical review (performed by Nurse Reviewer Ricci, who concluded that Plaintiff's primary diagnosis was Post-Laminectomy Syndrome of the lumbar region); and, (5) Defendant only gathered medical documentation on the mental/nervous claim (and only sought psychiatric opinions from Dr. Anthony), and not the back condition.[8]

Additionally, as for Defendant's position that it possessed insufficient medical documentation to award Plaintiff benefits, it first awarded benefits on the basis of the very same information in its file. As rehearsed, an "administrator's reversal of its decision to award a claimant benefits without receiving any new medical information to support this change in position is an irregularity that counsels towards finding an abuse of discretion." *Haisley* at 49 (citing *Miller* at 848). Here, after Plaintiff obtained counsel following Defendant's letter of September 24, 2013, closing his claim, 30 days later, allegedly on the basis of receiving "additional medical information," Defendant reversed its closing and re-opened Plaintiff's claim finding that "it is the medical departments opinion that Mr. Songer has no work capacity due to his psychiatric AND physical conditions." AR-0356-357. (Emphasis added). The record reveals that no new medical information was, in fact, provided to Defendant, and instead, Defendant based its new decision on Dr. Kang's 2010-2011 medical records (which Defendant had received

---

[8] The Plan Administrator is a fiduciary which must discharge its duties ". . . solely *in the interest of the participants . . . for the exclusive purpose of providing benefits to participants.*" 29 U.S.C. § 1104(a)(1)(A)(i). ERISA requires that every employee plan provide: "*adequate notice in writing to any participant . . . whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant.*" *Haisley, supra* at 53 citing 29 U.S.C. § 1133(1). These regulations mandate a letter denying a claim to include: "*description of any additional information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary. . . .*" *Id.* at 53 citing 29 C.F.R. § 2560.503-1(g)(iii).

in June of 2012, over a year prior).  Compare AR-0437,449 and AR-0601-603.  This claim of new information despite having none constitutes further evidence of claim process irregularities.

While one procedural irregularity does not support a finding that Plaintiff was denied a full and fair review of his claim, the combination of these irregularities lead the Court to the conclusion that Defendant denied Plaintiff a full and fair review of his claim and, therefore, acted quite arbitrarily and capriciously.  The Court agrees with Plaintiff that Defendant inappropriately transformed a claim based upon Plaintiff's back condition into a mental/nervous disability claim and used that decision as a way to limit benefits to 24 months.  AR-0385.  In light of Defendant's recognition that this decision was a complex one, (this claim "is a more difficult one to determine than most . . ."), AR-0252, the immediately above irregularities become more egregious.  Defendant, being the Plan Administrator, had a financial motivation to limit Plaintiff's claim to a nervous/mental condition.

As for the contentious debate regarding the two versions of the November 29, 2012 letter, the Court finds that the administrative record, and specifically, the claims log, does not support Defendant's version of the facts.  Plaintiff has attached a sworn affidavit, dated April 27, 2015, stating the following:

> (1)  The letter I received from Reliance Standard dated November 29, 2012 is attached as Exhibit "A."  It did not advise me that my benefits were awarded based on a mental/nervous disorder.
> (2)  I did not receive the November 29, 2012 letter from Reliance Standard attached as Exhibit B at any time.
> (3)  After receiving the November 29, 2012 letter, Exhibit A, I believed my benefits were awarded based on my back condition.  I was unaware that my application based upon my degenerative back condition was denied.
> (4)  I was first advised that my benefits were awarded from a mental/nervous disorder when I received a large check from Reliance Standard.  I called Reliance Standard and its representative told me, for the first time, that my benefits had been awarded based on a mental/nervous disorder.  I was upset and confused, because as I told them, I had applied based on my back condition.  Doc. No. 54-1.

18

Defendant attaches a dueling affidavit from, Mr. Wehrle, a claim examiner of Defendant, stating that he prepared two letters and that the letter with the limitations regarding mental/nervous disorder was sent only to Plaintiff. Doc. No. 55-1. In Defendant's brief, it argues that it did not send the mental/nervous disorder limitations letter to SSSI for "privacy reasons." Doc. No. 46 at 11.

Without engaging in a credibility determination between the affidavits of Plaintiff and Mr. Wehrle, the Court finds Plaintiff's position to be consistent with the administrative record as a whole, for the following reasons: (1) a copy of the claimed redacted employer letter was not included when Defendant sent its "entire" claims file to Plaintiff's counsel, pre-litigation; (2) Defendant's detailed claim log does not indicate that two different letters were sent, one to Plaintiff and another redacted letter to his employer, SSSI; (3) Defendant's claim file shows that typically when privacy issues are of concern, Defendant sends a cover letter to the employer explaining that confidential information was omitted; and, (4) the redacted letter was addressed to Mr. Songer, not SSSI.

### B. <u>Social Security Offset Calculation</u>

Plaintiff claims that Defendant's Social Security offset calculation also is arbitrary and capricious. Plaintiff's annual income prior to disability was approximately $147,500 per year or $12,292 per month. Under Defendant's policy, benefits are paid out at 60% of an employee's income, which would be $7,375 per month. Defendant's policy has a cap of $6,000. Plaintiff was awarded social security disability benefits of $2,277 per month. This award was based upon his actual earnings. Defendant, however, deducts 100% of Plaintiff's social security benefits from its benefits payments which is only 48.8% of Plaintiff's earnings. Plaintiff contends, and this Court agrees, that pursuant to the unambiguous Policy language (see Facts Section),

Defendant should only have deducted 100% of the Social Security Disability benefits from his benefits under the Policy, before it is further reduced by the Policy. The result is $7,375 less $2,277 for a payment due from Defendant of $5,098. To rule otherwise would be inconsistent with the Policy language as written, and would allow Defendant to receive a double deduction, which would result in a significant windfall to Defendant.

**VI.     Conclusion**

Plaintiff was entitled to a full and fair review of his claim for Long Term Disability Benefits. The review was neither full, nor fair. Instead, the process was fraught with irregularities. Thus, Defendant did not have "substantial evidence," that is "sufficient evidence for a reasonable person to agree with the decision," *Courson*, 214 F.3d at 142, to deny Plaintiff's Claim for Long Term Disability Benefits. The decision to deny his claim for Long Term Disability Benefits was arbitrary and capricious. The Court therefore DENIES Defendant's Motion for Summary Judgment (doc. no. 24), GRANTS Plaintiff's Motion for Summary Judgment, and finds that Plaintiff is entitled to an award of benefits consistent with this Memorandum Opinion. See *Lamanna*, 546 F.Supp.2d at 302 (citing *Porter v. Broadspire*, 492 F.Supp.2d 480, 491 (W.D. Pa. 2007) and *Addis v. Ltd. Long-Term Disability Program*, 425 F. Supp.2d 610, 621 (E.D. Pa. 2006)(where administrator inappropriately considered and evaluated the evidence, the proper remedy was to award benefits)). An appropriate Order follows.

**SO ORDERED** this 5th day of May, 2015.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties